| | | |
|---|---|---|
| **CLAYTON JAMES PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:13-cv-01414** |
| **v.** | ) | |
| | ) | **Judge Sharp** |
| **NATIONSTAR MORTGAGE, LLC** *et al.,* | ) | **Magistrate Judge Holmes** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Defendants, Nationstar Mortgage, LLC ("Nationstar"), Bank of America, N.A. ("BANA"), successor by merger to BAC Home Loan Servicing L.P., f/k/a Countrywide Home Loans Servicing, LP ("BAC"),[1] Mortgage Electronic Registration Systems, Inc., as nominee for Agency Mortgage Corp. and individually and MERSCORP Holdings, Inc. ("MERS") (collectively "Defendants")[2] filed a *Motion to Dismiss Amended Complaint* (Docket Entry No. 36)[3], to which Plaintiff Clayton James Phillips ("Plaintiff" or "Phillips") filed a response (Docket

---

[1] For simplicity, BAC Home Loans Servicing will be referred to as BANA.

[2] Excluded from this motion are Agency Mortgage Corporation and Ally Bank and its parent, Ally Financial, Inc. Subsequent to Defendants filing their motion to dismiss, Plaintiff filed a motion on December 17, 2014, seeking an extension of time in which to serve Defendants Ally Bank and Ally Financial, Inc. The Court granted the motion, allowing Plaintiff an additional 90 days to effect service on said Defendants. *See* (Docket Entry Nos. 45 and 46). To date, the record reflects no service of process on these Defendants, nor does it provide that Agency Mortgage Corporation was served with process. Consequently and in accordance with F.R.C.P. 4(m), Agency Mortgage Corporation and Ally Bank and its parent, Ally Financial, Inc. are hereby dismissed without prejudice.

[3] In addition to seeking dismissal of the Complaint, Defendants ask the Court pursuant to T.C.A. § 47-18-209(e)(2), to "award them its costs, including reasonable attorney's fees, due to the frivolous TCPA claim." (*Id.* at 24). That section allows a court to award attorney's fees if it finds that a private action under the TCPA "is frivolous, without legal or factual merit, or brought for the purpose of harassment...." Tenn. Code Ann. § 47–18–109(e)(2). If Defendants insist upon attorney's fees under this provision, they should do so in a separate motion.

Entry No. 40)[4] and Defendants filed a reply (Docket Entry No. 43).  For the reasons discussed herein, the Court will grant Defendants' motion.[5]

### RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff is a citizen and primary resident of Sumner County in the State of Tennessee.  In 2006, Plaintiff had moved to New Jersey from Tennessee for employment.[6]  On March 6, 2006, Plaintiff purchased property located at 2 Poppyseed Drive, Lumberton, New Jersey 08048 (the "New Jersey property").[7]  He had moved there from Mount Juliet, Tennessee, to take a management position.  Plaintiff's employment was a casualty of the financial crisis, and he was laid off in 2006 and was unable to sell his residence.

---

[4] In his response brief, Plaintiff has made only a passing request for leave to amend his pleadings to correct any defect in the Amended Complaint.  *See* (Docket Entry No. 40 at 1).  The Sixth Circuit has held that a motion for leave to amend the pleadings under Rule 15(a) is governed by Rule 7(b), which states that a motion "shall state with particularity the grounds for seeking the order." *Evans v. Pearson Enter., Inc.,* 434 F.3d 839, 853 (6th Cir. 2006) (citations omitted).  Where a party seeking leave to amend does so "in a single sentence without providing grounds or a proposed amended complaint to support" the request, the Sixth Circuit has held that the party fails to state the grounds for relief with particularity. *Id.* More specifically, "a bare request in an opposition to a motion to dismiss ... without any indication of the particular grounds on which amendment is sought" is insufficient. *Id.* (citing *Confederate Mem. Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C.Cir. 1993)).  The Court finds that Plaintiff's "bare request" is inadequate as a motion for purposes of Rules 7(b) and 15(a). Therefore, the request is denied.

[5] Defendants have also filed a *Motion to Ascertain Status of Case*.  (Docket Entry No. 47).  In the motion, Defendants informed the Court that Nationstar, the current holder of the note and servicer of the loan, has made the determination not to proceed with the liquidation of the property while this litigation is pending.  That motion will be denied as moot.

[6] Unless otherwise noted, the allegations are drawn from Plaintiff's Amended Complaint (Docket Entry No. 34, Am. Compl.).

[7] Plaintiff as grantee was conveyed the New Jersey property on March 6, 2006 by grantor Richard F. Hughes for the sum of $318,000.  Also on March 6, 2006, Plaintiff executed a Mortgage with Defendant Agency mortgage Corporation as Lender and Mortgage Electronic Registration Systems as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (Am. Compl. at ¶22).  The Mortgage split the security interest with MERS, if any, from the promissory note with the Lender Defendant Agency Mortgage Corporation, in the amount of $254,400.  According to Plaintiff,  MERS never held the note. MERS purported to assign the mortgage without the note in 2009 to BAC Home Loans Servicing LP, fka Countrywide Home Loans Servicing LP.

After moving back to Tennessee, he rented the residence for a period of time; there was a fire and subsequent repair. Plaintiff attempted without success to sell the property. His homeowners insurance paid for the repair, and Plaintiff administered payment to repair contractors whose work was supervised and approved by Defendant Bank of America. Plaintiff claims that after the repair was completed, Bank of America wrongfully took possession of Plaintiff's residential property and has to date retained possession.

In November 2009, BANA filed suit in the New Jersey Superior Court seeking a judicial foreclosure. Plaintiff *pro se* timely filed an Answer to the Complaint denying its allegations. According to Plaintiff, he reasonably and in good faith timely contacted Bank of America to resolve the mortgage situation by executing a deed in lieu of foreclosure or some other resolution. In 2010, a Bank of America agent informed Plaintiff to go into default before Bank of America would consider a deed in lieu of foreclosure, and Plaintiff followed instructions from the Bank's representative. Plaintiff wrote to BAC Home Loans' attorney on January 25, 2010, and made a good-faith offer to prevent foreclosure and discuss reasonable alternatives. Defendant BAC Home Loans and its agent failed to respond to Plaintiff's written offer. Plaintiff has diligently and repeatedly contacted BAC Home Loans' attorney's office, but his repeated phone calls were not returned.

On September 16, 2010, the New Jersey Superior Court entered summary judgment against Plaintiff, allowing Defendants to proceed with foreclosure on the New Jersey property. In the meantime, the State of New Jersey placed a stay on foreclosure cases by major banks including Bank of America from December 2010 to December 2012, to allow review for improprieties. The stay was lifted in December 2012. Bank of America has apparently transferred its foreclosure cases to Defendant Nationstar and dissolved BAC. Plaintiff claims

that Defendants obtained a summary judgment in 2010 without his knowledge – and BAC/Bank of America wrongfully took possession of the property by changing the locks and to date retains possession.

According to Plaintiff, because of improper assignments, fraudulent mortgage documentation, and wrongful foreclosure proceedings, Plaintiff claims full interest in title superior to all other claimants in the New Jersey property.

This mortgage-fraud and wrongful-foreclosure case was initially filed in Sumner County Chancery Court on November 5, 2013 (Docket Entry No.1-1)). On December 16, 2013, Defendants removed the case to this Court. (Docket Entry No. 1). Plaintiff filed a motion to remand the case to state court on January 22, 2014. The motion was subsequently denied on July 2, 2014. (Docket Entry Nos. 10 and 22). Plaintiff amended his Complaint on August 29, 2014 (Docket Entry No. 34).

On September 19, 2014, Defendants filed a Motion to Dismiss, along with a memorandum in support. (Docket Entry Nos. 36 and 37). Plaintiff filed a Response in Opposition on October 3, 2014. (Docket Entry Nos. 40 and 41). On October 17, 2014, Defendants filed a Reply. (Docket Entry No. 43).

**STANDARD OF REVIEW**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take "all well-pleaded material allegations of the pleadings" as true. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50,

173 L.Ed.2d 868 (2009)). " 'A legal conclusion couched as a factual allegation,' " however, "need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). Further, in determining whether a complaint sets forth a plausible claim, a court may consider not only the allegations, but "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008) (citation omitted).

A higher pleading standard applies to claims of fraud. *Schmidt v. Martin,* 2005 WL 2100645, *2 (W.D.Tenn. Aug.19, 2005). When alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). This requires allegations about "the time, place, and content of the alleged misrepresentation ...; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008) (citation omitted). Rule 9(b), however, "should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.' " *Id.* at 503. The key consideration is whether the complaint gives the defendant "fair notice" of the fraud claim and enables the defendant to prepare a responsive pleading. *Id.* at 504.

## ANALYSIS

This is a civil action to quiet title to Plaintiff's residential property, based on alleged mortgage fraud and wrongful foreclosure proceedings, wherein Plaintiff seeks to recover damages caused by Defendants' violations of state and federal law and to pursue appropriate legal and equitable remedies, monetary damages, and punitive damages. According to Plaintiff,

Defendants' misconduct resulted in premature and unauthorized foreclosure proceedings on Plaintiff's home, improper assignments of the mortgage, violations of Plaintiff's rights and protections, and the use of false and deceptive affidavits and documentation.

Defendants ask the Court to dismiss Plaintiff's Amended Complaint in its entirety. Specifically, Defendants argue,

> The majority of the Complaint and the voluminous exhibits attached to it relate to various recycled arguments long ago rejected by the courts. Plaintiff claims that the designation of MERS as nominee for the original lender "split the security interest from the note." He asserts, therefore, that the assignment from MERS to BANA is void. He further challenges a subsequent assignment from BANA and Nationstar as being void, although the reasons are not clearly articulated. It appears the thrust of the following counts are related to the assignments and plaintiff's claims that the designation of MERS and assignments from it are invalid: quiet title, fraudulent conveyance, slander of title, fraud and negligence. However, this court has consistently held that the "split the security interest from the note" fails to state any basis for relief because the assignment of the note carries with it the collateral.

> Plaintiff asserts claims arising from the institution of the foreclosure proceedings but most of those claims are barred by the applicable statute of limitations. He asserts violations of the TCPA and the NJ consumer protection act, but neither applies to this transaction. Plaintiff asserts violations of the NJ foreclosure act, but apparently did not review the statute and cases holding that the statute does not provide for a private cause of action. He fails to plead his fraud or misrepresentation claims with the specificity required by Rules 8 and 9, Fed.R.Civ.P. Finally, nowhere does he assert that he paid the loan, or was not in default at the time the foreclosure suit was filed.

> It is respectfully submitted that the amended complaint fails to state a claim upon which relief can be granted. Accordingly, the Complaint should be dismissed with prejudice.

(Docket Entry No. 37 at 2-3).

The Court will address the statute of limitations issue as well as Plaintiff's underlying theories about securitization and assignment of the Note, before addressing Defendants' arguments to dismiss each of Plaintiff's claims.

## A. Statute of Limitations

Defendants argue that some of Plaintiff's claims are barred by the statute of limitations. (Docket Entry No. 37 at 3, No. 43 at 2). Specifically, Defendants argue,

> In general, most of the claims relate to actions or activities that occurred prior to BANA filing suit in New Jersey in November 2009 to foreclose on the mortgage. As such, most of those claims asserted by plaintiff which relate to the events leading up to filing of the foreclosure suit will be barred by the applicable statute of limitations. For example, without regard to whether the misrepresentation or fraud or negligence claims state a basis for relief, Plaintiff's claims result from actions of BANA in the pre-foreclosure suit period. Clearly, those claims are barred by the three year statute of limitations in TCA § 28-3-105 as would be the slander of title claim that asserts injury to the property by falsely filing the mortgage or mortgage assignments that were filed prior to the foreclosure. Likewise, the TCPA claim would be barred by the one year statute of limitations in TCA § 47-18-110. The federal claims under FDCPA, that the BANA represented falsely that it was entitled to foreclose, are barred by the one year statute of limitations in 15 U.S.C., § 1692k(d) and the RESPA claims, requests for information and loss mitigation, are barred by the limitations periods in 12 U.S.C. § 2614.

(Docket Entry No. 43 at 2). Plaintiff does not necessarily argue otherwise in his response to the Motion to Dismiss. Plaintiff merely responds, "[s]uch a dismissal of any claim as time-barred would be improper, as discovery has not commenced and could determine that any applicable statute of limitations should be tolled. Under the discovery rule, when a particular cause of action accrues should be a question of fact."[8] (Docket Entry No. 41 at 7).

The statute of limitations is an affirmative defense, *see* Fed.R.Civ.P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim, *see* Fed.R.Civ.P. 8(a) (requiring "a short and plain statement of the claim"); *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the

---

[8] *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn.Ct.App. 1996).

complaint affirmatively show that the claim is time-barred. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate. *See Jones,* 549 U.S. at 215, 127 S.Ct. 910 ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"). *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 547 (2012).

Tenn. Code Ann. § 28-3-105, provides as follows:

The following actions shall be commenced within three (3) years from the accruing of the cause of action:

(1) Actions for injuries to personal or real property;

(2) Actions for the detention or conversion of personal property; and

(3) Civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability.

Plaintiff's claims for negligent misrepresentation (Count VI), fraud and misrepresentation (Count VII), negligence (Count X), and slander of title (Count IV) are all barred under this statute. With regard to negligent misrepresentation, Plaintiff claims he communicated with someone at BANA in January 2010. (Am. Compl. at ¶33). The Complaint was not filed until November 5, 2013. Further, Plaintiff's fraud and misrepresentation claim and his negligence claim all relate to foreclosure activities and pre-foreclosure actions, all of which occurred more than three years prior to November 2013. The actions Plaintiff purports support his slander of title claim – splitting the note from the security, the filing of assignments, and the institution of foreclosure[9] − all took place prior to filing this action. Consequently, these claims are barred by the applicable statute of limitations.

---

[9] As stated *supra*, the foreclosure proceeding was filed in November 2009.

The Tennessee Consumer Protection Act ("TCPA") claim (Count XI) against Defendants, as set forth in Tenn. Code Ann. § 47-18-110, states that "any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice . . ." With respect to Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim (Count XIV), Title 15 U.S.C. § 1692k(d) provides that any action to enforce liability created by this subchapter . . . may be brought within one year from the date of the occurrence of the violation. Likewise, with respect to the Real Estate Settlement Procedures Act ("RESPA") claim (Count XV), Title 12 U.S.C. § 2614 provides that any action pursuant to § 2607 may be brought within one year from the date of the occurrence of the violation. Plaintiff filed this action on November 5, 2013. The loan originated on March 6, 2006, and the foreclosure action was filed in November 2009. Here, the alleged wrongful acts purportedly given rise to these claims, occurred between March 2006 and November 2009,[10] the pre-foreclosure action period – all clearly prior to one year before this lawsuit was filed. As such, the TCPA claim (Count XI), the FDCPA claim (Count XIV), and the RESPA claim (Count XV) are barred by the applicable statute of limitations.

Therefore, the above-mentioned claims are barred unless the "discovery rule" applies. "Ordinarily the 'discovery rule' applies to establish the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action. This test is an objective one, and the Court determines what event should have alerted the typical lay person to protect his or her rights." *Sharpe v. Cureton,* 319 F.3d 259, 266 (6th Cir. 2003) (internal citations and quotation omitted). The Court is unaware of, and Plaintiff has not

---

[10] At the latest, Plaintiff alleges that he contacted BANA in January 2010 concerning executing a deed in lieu of foreclosure or some other resolution. (Complaint ¶ 33). And on September 16, 2010, New Jersey Superior Court entered summary judgment against Plaintiff, allowing Defendants to proceed with foreclosure on the New Jersey property. This is still outside the applicable time period.

offered, any facts or events which tend to suggest Plaintiff did not know or had no reason to know of the alleged events at the very latest in November 2009, when the judicial foreclosure proceeding was filed. Viewing the facts in the best light possible for Plaintiff and drawing all reasonable inferences in favor of Plaintiff, the Court concludes Plaintiff knew or should have known of Defendants' purported wrongdoings on or before November 2009. Thus, assuming the allegations of the Amended Complaint are true, it is apparent that the aforementioned claims are time-barred. Accordingly, the Court will dismiss these claims.

**B. Securitization and Assignment**

According to Plaintiff, "[t]he mortgage industry created Defendant MERS to allow financial institutions to evade county recording fees, avoid the need to publicly record mortgage transfers, and facilitate the rapid sale and securitization of mortgages *en masse*." (Am. Compl. at ¶ 15). Furthermore, Plaintiff argues,

> The MERS System effectively eliminated homeowners' and the public's ability to track the purchase and sale of properties through the traditional public records system. Instead, this information is now stored in a private database maintained by MERS. However, the MERS database is unreliable and inaccurate. Defendant Servicers, along with other MERS members, have failed consistently to register loan transactions in the MERS System, including transfers of ownership interests and servicing rights.

> \*\*\*

> The use of the MERS System, coupled with faulty and sloppy document preparation and execution practices, has resulted in the subject foreclosure proceeding being filed against Plaintiff, where the foreclosing party lacks the authority and standing to sue. Since MERS Inc. served as mortgagee of record, the foreclosing party had to be assigned the mortgage before filing the proceeding against Plaintiff to have standing. However, this assignment was not properly made. MERS' nonemployee "certifying officers", including Defendants' employees and agents, have executed and submitted to the court a MERS assignment that contains many defects, including affirmative representations of fact, which render it false, deceptive, and/or invalid. The assignments in Plaintiff's case appear to have automatically generated and "robosigned" by individuals who

> did not review the underlying property ownership records, confirm the document's accuracy, or even read the document, and had conflicts of interest. These false and defective assignments have masked gaps in the chain of title and the foreclosing party's inability to establish its authority to foreclose, and as a result have misled Plaintiff, undermined the integrity of the judicial process, and created clouds of title on Plaintiff's property that require removal.

See (*Id*. at ¶¶ 15, 19). Defendants argue MERS held an interest in the Note as beneficiary of the deed of trust and could validly assign the Note in its authority as nominee for the lender and its assigns. (Docket Entry No. 43 at 3).

MERS is a company that provides mortgage recording services to lenders and "allows the lenders to trade the mortgage note and servicing rights on the market" with MERS maintaining electronic recordings of each transaction. *Mortg. Elec. Regis. Sys., Inc. v. Neb. Dep't of Banking and Fin.,* 270 Neb. 529, 704 N.W.2d 784, 787 (2005). "'When the mortgage loan is repaid, MERS, as agent grantor, conveys the property to the borrower.'" *Id.* Courts have consistently upheld the validity of MERS's role as nominee for a promissory note's lenders and assigns, and as beneficiary under a deed of trust. *See Thompson v. Am. Mortgage Ex. Corp.,* No. 3-13-0817, 2014 WL 1631001, at *4 (M.D. Tenn. April 23, 2014*); Samples v. Bank of Am., N.A.,* No. 3:12–CV–44, 2012 WL 1309135, at *3–4 (E.D. Tenn. April 16, 2012) (finding claims based on invalid assignment by or the role of MERS in mortgage transactions—where the deed of trust named MERS as the beneficiary and nominee for the lender and its assigns—failed as a matter of law); HSBC Bank USA v. Ulversoy, 2012 WL 3021460, at *8 (N.J. Super. Ct. App. Div. July 25, 2012) (holding that MERS had the authority under the Mortgage to assign both the Mortgage and the Note); *In re Mortg. Elec. Regis. Sys. Litig.,* MDL No. 09–2119–JAT, 2011 WL 4550189, at *3–4 (D. Ariz. Oct.3, 2011) (finding a deed of trust can grant MERS authority as the beneficiary of the deed and nominee for the note holder); *Golliday v. Chase Home Fin., LLC,* No. 1:10–cv–532, 2011 WL 4352554, at *7 (W.D. Mich. Aug.23, 2011) ("Over the twenty years that MERS

has existed, borrowers who have defaulted on their loan obligations have attempted, without success, to attack the validity of the mortgage based on the involvement of MERS.").

Here, the Mortgage names MERS as a "nominee for Lender and Lender's successors and assigns." (Docket Entry No. 34-1 at 2). Several courts have held language identical to that in the Deed of Trust grants MERS the authority "to act as the agent of any valid note holder, including assigning a deed of trust and enforcing a note." *Samples,* 2012 WL 1309135, at *4. The Mortgage states "the Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (*Id*. at 11). The Court finds that, under the terms of the Mortgage, MERS could validly assign the Note, as nominee of the lender or lender's assigns, could assert an interest in the New Jersey property as beneficiary of the Mortgage.

Next, Plaintiff claims that the designation of MERS as nominee for the original lender "split the security interest from the note." (Am. Compl. at ¶ 3). Further, Plaintiff argues that the original lender was Agency Mortgage Corp.; MERS was the putative mortgagee – and never held the note. (Docket Entry No. 41 at 3). Plaintiff, asserts, therefore, that the assignment from MERS to BANA is void. (*Id*.). He further challenges a subsequent assignment from BANA and Nationstar as being void. (*Id*.). Defendants respond that "this Court has consistently held that the 'split the security interest from the note' fails to state any basis for relief because the assignment of the note carries with it collateral." (Docket Entry No. 37 at 2-3).

"It is well settled under Tennessee law that any assignment of a note automatically transfers beneficial ownership of the accompanying deed of trust." *Samples,* 2012 WL 1309135, at *4 (citing *W.C. Early Co. v. Williams,* 135 Tenn. 249, 186 S.W. 102, 103 (Tenn.1916)); *see also Gibson v. Mortg. Elec. Regis. Sys., Inc.,* No. 11–2173–STA, 2012 WL 1601313, at *4

(W.D.Tenn. May 7, 2012). "The lien of a mortgage or trust deed passes, without a special assignment thereof, to the indorsee of a note or transferee of the debt secured by the instrument. The policy of the law is to treat the note as the principal thing and the mortgage as the incident." *W.C. Early Co.,* 186 S.W. at 103–04. Tennessee law does not require note assignees to record assignments in order to enforce the notes against third parties. *Id.* at 103 ("in this state we have no statutory requirement that the assignee of notes secured by a mortgage or trust deed must, in order to the preservation of his lien as against third persons, record an assignment of the instrument which secures the same."). The same holds true for New Jersey law. *Bank of New York v. Raftogianis*, 13 A.3d 435, 449-450 (N.J. Super. Ct. App. Div. 2010) ("So it is than an assignment of bond or note evidencing a secured obligation will operate as an assignment of the mortgage "in equity").

The Court finds that any transfer of the Note implicitly transferred the Mortgage and did not destroy the assignee's right to enforce the terms of either document.

## C. Failure to State a Claim

### 1. Quiet Title (Count I)

"To succeed on a claim for quiet title, "the complainant must show that he himself has the title, or else he has no right to have a cloud removed from that to which he has no title in himself." *Hoyal v. Bryson,* 53 Tenn. 139, 141 (1871); *see Grand Hotel, LP v. Cardin,* No. M2004–00996–COA–R3–CV, 2005 WL 2012778, at *4 (Tenn.Ct.App. Aug. 11, 2005). "Generally, the complainant must show he holds legal title to the disputed property." *Grand Hotel,* 2005 WL 2012778, at *5.

Defendants argue that Plaintiff's quiet title claim should be dismissed. In support, Defendants contend that Plaintiff has acknowledged (1) the property is located in New Jersey;

(2) he is not in possession of the property at this point having vacated it; and (3) the mortgage is collateral to repay the note that is in default and he has not tendered or offered to pay that which is due and owing on the loan.  (Docket Entry No. 37 at 4-5).[11]  He does, however, purport to "claim[] rights to superior title to his residence and asserts the entire chain of title has been irretrievably broken, caused by the misconduct and omissions of moving parties."  (Docket Entry No. 41 at 6).

Setting aside the jurisdictional matter, based on the discussion *supra* regarding assignments, the Court finds Plaintiff's arguments meritless.  Plaintiff has failed to plead that he has fulfilled his obligation under the Note, a step which is necessary for him to obtain superior legal title to the New Jersey property.  Plaintiff has not alleged that he paid the debt in full, and thus he does not have the right to obtain title of the property from the trustee.  Because only a party with valid title may assert a claim for quiet title, Plaintiff has failed to allege facts sufficient to show that he has legal title to the New Jersey property.  Thus, the Court finds his quiet title claim fails.

## 2. Declaratory Relief (Count II)

Defendants argue that Plaintiff's request for declaratory relief should be denied.  Plaintiff requests the following declaratory relief:

(a) that Defendants MERS, BANA, and Nationstar have no legal rights under the Deed of Trust; (b) that there appears no valid assignment of legal or equitable rights under said Deed of Trust to any party; [and] (c) that the Corporate Assignment is void, invalid, and confers no rights whatsoever.

---

[11] Defendants further contend a quiet title action is an action in rem, and that "[t]his Court has no jurisdiction over property that is located in New Jersey," citing 65 Am. Jur. 2d *Quieting Title* §61. (*Id.*).  Plaintiff fails to address the jurisdictional issue.  In 65 Am. Jur. 2d *Quieting Title* §61, the treatise states "[a] court may not make a decree operating directly on title to land that is situated in another state . . . [b]ecause a quiet title is in rem or quasi in rem, . . . jurisdiction lies where the property is located."  This Court lacks jurisdiction to provide the relief sought under this claim.  Further, the New Jersey Superior Court has already granted Defendants summary judgment in the foreclosure suit, authorizing the foreclosure proceeding.

(Am. Compl. at ¶ 41).

"The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984). The Sixth Circuit articulates the following five factors to be considered in determining whether a court should render declaratory relief, *id.* (citations omitted):

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Based on the discussion *supra* regarding assignments, the Court declines to render the requested declaratory relief. Consequently, this claim will be dismissed.[12]

*3. Fraudulent Conveyances (Count III)*

Plaintiff's claim for fraudulent conveyance alleges the purported assignments of mortgage were fraudulent conveyances because the (1) conveyances and assignments lacked consideration, (2) MERS was not a proper party to the assignments, and (3) MERS' purported execution of the mortgage to Nationstar appears to be "robosigning" in that the signatures appear to have been improperly notarized and the individuals purportedly signing were not authorized. (Am. Compl. at ¶ 46).

Courts have found that fraudulent conveyance claims must comport with the particularity

---

[12] Additionally, Plaintiff's request for injunctive relief will be denied as well.

pleading requirement of Rule 9(b). *See United States v. Buaiz,* No. 3:07–CV–83, 2008 U.S. Dist. LEXIS 100393, at *5–6, 2008 WL 5204147 (E.D. Tenn. Dec. 11, 2008) (applying Rule 9(b) to the plaintiff's claim of fraudulent conveyance). Rule 9(b) requires that all averments of fraud or mistake be pleaded with particularity. Fed.R.Civ.P. 9(b). In order to comply with the Rule 9(b) requirement, a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA–The Healthcare Co.,* 447 F.3d 873, 877 (6th Cir. 2006) (citation and internal quotation marks omitted). Pleading these elements "ensur[es] that a defendant is provided with at least the minimum degree of detail necessary to bring a competent defense' to a claim of fraud." *United States v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008).

Plaintiff's allegations fail to include particularized facts with respect to the who, the what, the when, the where, and the how regarding the alleged fraudulent conduct. There is no allegation regarding the time or place in which the fraudulent presentations or transfers were made. Thus, Plaintiff's allegations fail to satisfy the Rule 9(b) standard, and this claim will be denied.

*4. Conversion (Count V)*

Defendants next assert that the Amended Complaint fails to state a claim for conversion. Plaintiff's conversion claim arises from the allegation that he never abandoned the New Jersey property. Rather, he claims that following a fire on the property, BANA changed the locks on the house – and as a result, he was prohibited from "maintaining, leasing, or selling the home." (Am. Compl. at ¶ 54). Defendants counter that Plaintiff defaulted on the loan, and he did

abandon the property.  (Docket Entry No. 37 at 11).[13]

Conversion is defined as "the wrongful exercise of dominion and control over property owned by another inconsistent with the owners' rights." *Sun Coast Merch. Corp. v. Myron Corp.,* 393 N.J.Super. 55, 84, 922 A.2d 782 (N.J.Super.Ct.App.Div. 2007), *certif. denied,* 194 N.J. 270, 944 A.2d 30 (N.J. 2008) (citation omitted).  The elements of common law conversion under New Jersey law are (1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant. *Carton v. Choice Point,* 450 F.Supp.2d 489, 501 (D.N.J. 2006) (citation omitted).

Viewing the First Amended Complaint in the light most favorable to Plaintiff, the Court finds that it does not sufficiently allege a claim for conversion.  Therefore, this claim will be dismissed.

*5. Breach of Contract (Count VIII)*

In the context of a motion to dismiss, a breach of contract claim must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery. *Twombly,* 550 U.S. at 562, 127 S.Ct. 1955 (2007).  To establish a breach of contract, a plaintiff must show "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.,* —— S.W.3d ——, ——, 2011 WL 4416561, at *5 (Tenn.Ct.App. Sept. 23, 2011) (internal quotation marks omitted). The interpretation of a contract is a legal issue for the Court. *First Am. Nat'l Bank v. Fidelity & Deposit Co. of Md.,* 5 F.3d 982, 984 (6th Cir.1993).  The elements for breach of contract in New Jersey are identical.

---

[13] Additionally, Defendants argue that under the term of the Mortgage, they were permitted to take necessary steps to secure the property if it was abandoned, including changing the locks.  (*Id.*).

*See*, *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F.Supp.2d 552, 561 (D.

N.J. 2002).

Plaintiff alleges that Defendants have breached the contract between them by not giving

Plaintiff notice of the assignment from MERS to BANA, using MERS as mortgagee, and using

MERS' certifying officer to improperly assign the agreement. Defendants contend that Plaintiff

was guilty of the first breach by not fulfilling the conditions of the contract – by defaulting on the

loan. (Docket Entry No. 37 at 14). Further, Defendants argue that Plaintiff's allegations cannot

give rise to a breach of contract claim because "[t]he contract, i.e., the mortgage, states that

MERS is the 'nominee for Lender and Lender's Successors and Assigns,' and Plaintiff agreed to

this relationship when he signed the note and the mortgage. (*Id.*). Moreover, there is no

requirement that Plaintiff consent "before the note could be transferred by Agency Mortgage or

that he be given notice in advance of the assignment." (*Id.*). Lastly, Defendants contend that

Plaintiff cannot show how he was damaged by any so-called breach (he does not allege that he

made payments to MERS that were not applied to the loan; he does not allege that his lack of

consent to the assignment somehow damaged him; he was in default when BANA initiated the

foreclosure and therefore, had failed "to fulfill the conditions of the contract that he accuses"

Defendants of breaching). (*Id.* at 15-16).

Despite Plaintiff's allegations and the reasons stated *supra* regarding assignments, this

claim must also fail. The Court cannot identify the existence of any contract between the parties

that agreed to provide such notice to Plaintiff. Likewise, the Court cannot identify in the record

the breach of any existing contract by Defendants. Accordingly, this claim will be dismissed.

*6. Promissory Estoppel (Count IX)*

The Tennessee Supreme Court has defined promissory estoppel as "a promise which the

promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." *Alden v. Presley,* 637 S.W.2d 862, 864 (Tenn. 1982) (quoting Restatement of Contracts § 90). The court has added that the promise "is binding if injustice can be avoided only by enforcement of the promise." *Id.* The court in *Alden* defined the following limits of the theory: "(1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonably in justifiable reliance on the promise as made." *Id.* The doctrine of promissory estoppel is also known as "detrimental reliance" because the plaintiff must show that a promise was made and that the plaintiff reasonably relied on the promise to his detriment. *EnGenius Entm't, Inc. v. Herenton,* 971 S.W.2d 12, 19–20 (Tenn.Ct.App. 1997).

Tennessee does not liberally apply the doctrine of promissory estoppel. Rather, the doctrine is available only in exceptional cases where the circumstances border on actual fraud. *Baliles v. Cities Serv.,* 578 S.W.2d 621 (Tenn. 1979); *Shedd v. Gaylord Entm't Co.,* 118 S.W.3d 695, 700 (Tenn.Ct.App. 2003) (limiting the application to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud"). The Tennessee statute of frauds prohibits actions against a lender or creditor for the enforcement of oral promises to "lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit." Tenn. Code Ann. § 29–2–101(b)(1).

Here, Plaintiff's claim for promissory estoppel derives from the same allegations set for in his breach of contract argument. For the reasons previously stated, this claim will also be

dismissed.

*7. New Jersey Consumer Fraud Act Claims (Count XII)*

The New Jersey Consumer Fraud Act ("NJCFA") was enacted to "protect against fraudulent and unconscionable practices in the sale of goods and services." *Marascio v. Campanella,* 298 *N.J.Super.* 491, 500, 689 *A.*2d 852 (App.Div. 1997). The purposes of the NJCFA are: (1) to compensate the victim for his or her actual loss; (2) to punish the wrongdoer through the award of treble damages; and (3) to attract competent counsel to counteract the "community scourge" of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual. *See Lettenmaier v. Lube Connection, Inc.,* 162 *N.J.* 134, 139, 741 *A.*2d 591 (1999). The NJCFA is "remedial legislation and should be liberally construed to accomplish its dual objectives of deterrence and protection." *Joe D'Egidio Landscaping v. Apicella,* 337 *N.J.Super.* 252, 258, 766 *A.*2d 1164 (App.Div. 2001) (citing *Lettenmaier v. Lube Connection, Inc., supra,* 162 *N.J.* at 139, 741 *A.*2d 591).

The Legislature enacted the NJCFA in 1960 to give consumers relief from fraudulent practices in the marketplace and to deter merchants from employing those practices. *Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 21, 647 *A.*2d 454 (1994). Today, the NJCFA makes it unlawful for a person to use "any unconscionable commercial practice, deception, fraud, false pretense, false promise [or] misrepresentation ... in connection with the sale or advertisement of any merchandise. N.J.S.A. 56:8-2. The Act protects against knowing misrepresentations, omissions of material fact, and violations of administrative regulations, whether or not the merchant acts in bad faith. N.J.S.A. 56:8-2; *Cox v. Sears Roebuck & Co., supra*, 138 *N.J.* at 16–17, 647 *A.*2d 454; *Gennari v. Weichert Co. Realtors*, 148 *N.J.* 582, 605, 691 *A.*2d 350 (1997).

Defendants contend Plaintiff's New Jersey Consumer Fraud Act claims ("NJCFA")

should be dismissed because the NJCFA does not apply to the allegations in this case.  (Docket Entry No. 37 at 19).   Defendants argue that the NJCFA only "encompasses consumer commercial transactions involving the marketing and sale or advertisement of any merchandise or real estate."  (*Id*.).  In Plaintiff's Amended Complaint, he contends Defendants violated the NJCFA through its loan servicing and foreclosure proceedings.  (Am. Compl. at ¶ 81).

"To state a claim within the scope of the CFA, a plaintiff must allege facts that establish that the alleged fraudulent conduct induced or lured the plaintiff into purchasing merchandise or real estate." *Joe Hand Promotions, Inc. v. Mills,* 567 F.Supp.2d 719, 726 (D.N.J. 2008).  The allegations in the Amended Complaint fall short of this standard. The Court finds that Plaintiff's allegations surrounding the loan servicing and foreclosure proceeding are not covered under the NJCFA.   Moreover, even if they were, Plaintiff's allegations fail to satisfy the Rule 9(b) standard.  Accordingly, this claim will be dismissed.

*8. New Jersey Fair Foreclosure Act (Count XIII)*

Plaintiff alleges that Defendants violated the New Jersey Fair Foreclosure Act ("NJFFA") because they failed to provide him with proper notice of the foreclosure.  Defendants argue, and the Court agrees, that there is no private action under the NJFFA.  *See*, *Nationstar Mortgage, LLC v. Baronfeld,* No. 13–CV–7417 FSH JBC, 2014 WL 5361890, at *3 (D. N.J. Oct.21, 2014); *Skypala v. Mortgage Elec. Registration Sys., Inc.,* 655 F.Supp.2d 451, 457 n .14 (D. N.J. 2009) (citing *Martino v. Everhome Mortgage,* 639 F.Supp.2d 484, 491 n. 13 (D. N.J. 2009)).

Therefore, this claim will be dismissed.

## CONCLUSION

For all of the reasons stated, Defendants' *Motion to Dismiss Amended Complaint* (Docket Entry No. 36) will be granted.  Further, Defendants' *Motion to Ascertain Status of Case* (Docket Entry No. 47) will be denied as moot.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE